**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

LORRAINE J. SMITH          :       CIVIL ACTION

        v.                  :

MICHAEL J. ASTRUE[1]        :      NO. 06-3193

**MEMORANDUM**

**Baylson, J.**                                         **June 29, 2007**

## I.     Introduction

Plaintiff, Lorraine J. Smith, brings this action pursuant to 42 U.S.C. § 405(g) seeking review of the Defendant Social Security Commissioner's decision to deny her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f ("Act"). Currently before this Court is Plaintiff's Motion for Summary Judgment. For the reasons that follow, Plaintiff's Motion for Summary Judgment will be denied and judgment will be entered in favor of the Defendant.

## II.     Factual and Procedural Background

Plaintiff, who is currently forty-nine years old, was forty-six when she submitted her initial application for Social Security benefits on March 22, 2004. Although Plaintiff completed the ninth grade, she is illiterate. She has performed past relevant work as a security guard, dishwasher, garment sorter, production helper and warehouse worker. Plaintiff claims she

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue has been substituted for former Commissioner Jo Anne Barnhart as the defendant in this lawsuit.

suffers from a number of medical problems that have rendered her disabled and therefore entitled

to SSI benefits including tricompartmental osteoarthritis of the left knee, bilateral knee

degenerative joint disease ("DJD"), mild DJD of the left hip, chronic discogenic disease of the

lumbar spine at L1-2 with osteophytosis from L1-4, massive obesity, major depression and

limited cognitive functioning.

After the Social Security Administration denied her initial application for benefits,

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  The ALJ held that

hearing on October 14, 2005 and issued a decision two months later, on December 29, 2005,

concluding that Plaintiff was not entitled to SSI benefits.  In her decision, the ALJ found that

Plaintiff's conditions of DJD in the left knee, back pain and right knee pain, obesity, depression

and limited cognitive functioning are all severe impairments within the meaning of the applicable

Social Security regulations.  Nonetheless, the ALJ concluded that the Plaintiff's allegations

regarding her limitations are not totally credible and, while Plaintiff is unable to perform any of

her past relevant work, she retains the residual functional capacity ("RFC") to perform a range of

sedentary and light work.  The ALJ accordingly found that Plaintiff can perform work that

requires her to lift ten pounds frequently and to lift a maximum of twenty pounds; sit or stand

and walk six hours in a eight hour work day; occasionally climb, balance, stoop, kneel or crouch;

and understand, remember and follow simple (not detailed) instructions.  (R. 29.)  At the same

time, the ALJ concluded Plaintiff cannot crawl, use her feet (bilaterally) for repetitive movement

such as operating foot controls or pushing and pulling, or perform a job where reading and

writing are critical parts of her job duties.  She is also limited to low stress work, with only

occasional decision making, changes in work setting, or interaction with the general public and

coworkers.  The ALJ acknowledged that Plaintiff's exertional limitations precluded her from performing a full range of light work, but found there were still a significant number of jobs in the national economy that Plaintiff could perform. (R. 30.)  Accordingly, the ALJ concluded that Plaintiff was not disabled as it is defined in the Act and therefore not entitled to SSI benefits.

Plaintiff appealed the ALJ's decision to the Social Security Appeals Council.  On June 22, 2006, the Appeals Council denied Plaintiff's request for review.  Plaintiff then filed an action in this Court on July 20, 2006 seeking review of the ALJ's decision.  She filed the present Motion for Summary Judgment three months later, on November 2, 2006.  Plaintiff argues that the Commissioner's decision to deny her social security benefits was unsupported by substantial evidence and applied improper legal standards.  She requests that this Court enter judgment in her favor and award the benefits to which she claims she is entitled or, in the alternative, remand the claim to the Commission for a proper determination.  Defendant responds that the Commissioner's decision was supported by substantial evidence and should be affirmed.

### III.   Legal Standard

The standard of review of an ALJ's decision is plenary for all legal issues.  See Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  The scope of the review of determinations of fact, however, is limited to determining whether or not substantial evidence exists in the record to support the Commissioner's decision.  See Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).  As such, "[t]he Court is bound by the ALJ's finding of fact if they are supported by substantial evidence in the record."  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999); see also Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986) (holding if "an agency's fact finding is supported by substantial evidence, reviewing courts lack power to

reverse . . . those findings").  The Court must not "weigh the evidence or substitute [its own] conclusions for those of the fact-finder." Rutherford, 399 F.3d at 552 (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)). "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (internal quotation omitted).

## IV.  **Discussion**

In order to establish a disability under the Social Security Act, a claimant must demonstrate that she suffers from a mental or physical impairment that prevents her from engaging in substantial gainful activity for a period of at least twelve months.  42 U.S.C. § 423(d).  The Social Security regulations set forth a five-step sequential evaluation process for determining disability:  (1) if the claimant is currently engaged in substantial gainful employment; (2) if not, whether the claimant suffers from a severe impairment; (3) if the claimant has a severe impairment, whether that impairment meets or equals those specifically listed the Social Security regulations, and thus is presumed to be severe enough to preclude gainful work; (4) whether, considering the claimant's residual functional capacity, the claimant can still perform work he or she has done in the past despite the severe impairment; and (5) if not, whether the claimant is capable of performing any other jobs existing in significant numbers in the national economy in view of the claimant's age, education, work experience and residual functional capacity.  See Ramirez v. Barnhart, 372 F.3d 546, 550-51 (3d Cir. 2004); 20 C.F.R. §§ 404.1520, 416.920.  An affirmative finding at steps one, four or five will lead to a finding that claimant is not disabled.  20 C.F.R. § 404.1520(b)-(g).

A.      **ALJ's Reliance on Vocational Expert Testimony**

Plaintiff first argues that the ALJ failed to inquire about alleged inconsistencies between the Vocational Expert's ("VE") testimony and the information found in the Dictionary of Occupational Titles ("DOT') as required under Social Security Ruling 00-4p, 2000 WL 1898704 ("SSR 00-4p"). As a result, Plaintiff contends that the ALJ's step five determination based on that testimony is not supported by substantial evidence. Defendant responds that there was no conflict between the VE's testimony and the DOT requiring further explanation, and the ALJ's determination that Plaintiff was not disabled is supported by substantial evidence in the record.

Under SSR 00-4p, "[o]ccupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT." Id. at *2. In the case of an apparent unresolved conflict between evidence provided by the VE and the DOT, the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether a claimant is disabled." Id. If an ALJ fails to obtain an explanation for the conflict, the court should remand the case to the Commissioner in order to obtain further testimony from the VE. See Williams v. Barnhart, 424 F. Supp. 2d 796, 804-05 (E.D. Pa. 2006).

In this case, the ALJ's hypothetical to the VE asked the VE to assume an individual similar in age and background to the Plaintiff who was, among other things, limited to jobs requiring only occasional interaction with the general public and coworkers, decision making or changes in the work setting, and who had the ability to understand, remember and follow simple but not detailed instructions. (R. 253.) The VE advised the ALJ that such an individual could perform a significant number of unskilled light jobs in the national economy including as a small

parts assembler, light fixture assembler and hospital equipment assembler as well as unskilled sedentary work as a lamp shade assembler or laminator.  (R. 254-55.)

Plaintiff argues that the VE's testimony is contradicted by the job descriptions contained in the DOT.  Under the DOT, the occupations of small parts assembler, light fixture assembler and assembler of plastic hospital equipment have a General Education Development ("GED") reasoning development level of two, which the DOT defines as an individual who has the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "deal with problems involving a few concrete variables in or from standardized situations."  U.S. Dep't of Labor Office of Admin. Law Judges, Dictionary of Occupational Titles App. C (4th ed. rev. 1991) (emphasis added).  Plaintiff contends that, in line with the ALJ's RFC finding that she is able to follow simple but not detailed instructions, she is only capable of performing occupations requiring a GED reasoning development level of one, which the DOT defines as the ability to "[a]pply commonsense understanding to carry out simple one-or-two-step instructions."  Id. (emphasis added).  According to Plaintiff, under the guidelines set out in SSR 00-4p, the ALJ was therefore required to ask the VE for a reasonable explanation of the conflict between her opinion that an individual with Plaintiff's RFC could perform certain jobs and the DOT's descriptions of those jobs.  Plaintiff contends that the ALJ's failure to do so requires a remand to obtain further information.

This Court finds the VE's testimony that Plaintiff may perform some jobs which, according to the DOT, requiring a GED reasoning level of two corresponding to an ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" is compatible with the ALJ's RFC determination that Plaintiff "has sufficient

attention and concentration to understand, remember and follow simple (not detailed) instructions." (R. 29.)  The Third Circuit addressed a similar issue in a non-precedential opinion. In <u>Money v. Barnhart</u>, the plaintiff had argued that a VE's testimony that she could perform some jobs which required level two reasoning conflicted with the ALJ's instruction that the plaintiff had the RFC to perform only simple jobs.  In rejecting this argument, the Third Circuit observed, "[w]orking at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive."  <u>Money v. Barnhart</u>, 91 Fed. Appx. 210 (3d Cir. 2004) (non-precedential); <u>see also</u> <u>Hurse v. Barnhart</u>, No. 05-5483 (E.D. Pa.  May 22, 2006) (unpublished order adopting magistrate judge's report and recommendation) (holding that reasoning level of two is consistent with limitation that claimant may only perform simple, routine work).  Courts in at least two other circuits have reached similar conclusions.  See <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that ALJ's finding that claimant was limited to simple and repetitive work was consistent with ability to perform jobs requiring level two reasoning); <u>Temple v. Callahan</u>, No. 96-55024, 1997 WL 289457 (9th Cir. May 29, 1997) (unpublished opinion) (noting that reasoning level of two consistent with ALJ's restriction that plaintiff could only perform simple, routine and repetitive tasks).[2]  As the Ninth Circuit observed in interpreting

---

[2]  Plaintiff urges the Court to follow the approach taken by two other courts in this district in two unreported decisions, <u>Collier v.  Barnhart</u>, No. 04-5209 (E.D. Pa. Nov. 25, 2005) (unpublished order adopting magistrate judge's report and recommendation) and <u>Young v. Barnhart</u>, No. 05-3515 (E.D. Pa.  Mar. 20, 2006) (unpublished order).  In both cases, the court remanded the plaintiff's claim to the Commissioner for further exploration based on the apparent discrepancy between the ALJ's RFC finding that the plaintiff had the ability to perform only simple tasks and the VE's testimony that the plaintiff could perform jobs requiring reasoning levels of two or higher.  Each court relied on the language of SSR 00-4p without referring to any of the cases that have addressed the question of whether an RFC limiting a claimant to performing only simple work actually conflicts with the DOT definition of reasoning level two. For the reasons discussed above, the Court adopts the approach taken in <u>Money</u> and finds that no

the definition of level two reasoning found in the DOT, "Work that requires 'commonsense understanding' is simple. Work that requires 'uninvolved written or oral instructions' is simple and routine." Temple, 1997 WL 289457, at *2.

Plaintiff's argument seeks to equate the DOT's use of the word "detailed" in the definition of reasoning development level two with the use of the word "detailed" in the Social Security regulations governing the formulation of a claimant's mental RFC. This Court cannot agree. The definitions of "detailed instructions" under the Social Security regulations and the DOT are not identical. See Meissel v. Barnhart, 403 F. Supp. 2d 981, 983-84 (C.D. Cal. 2005) (rejecting claimant's argument that DOT's use of word "detailed" is equivalent to use of "detailed instructions" in the Social Security regulations, "[t]he Court is not convinced that such a neat, one-to-one parallel exists"). To find otherwise would be to ignore the distinct contexts in which the word "detailed" is used in the Social Security regulations and in the DOT.

One of the nonexertional limitations that an ALJ may consider in determining a claimant's RFC to perform substantial gainful activity is whether a claimant has "difficulty understanding or remembering detailed instructions." 20 C.F.R. § 416.969a(c)(1)(iii). The regulations further provide that the ability to perform basic work activities includes the ability to understand, carry out and remember "simple instructions." 20 C.F.R. § 416.921. The Social Security regulations thus recognize two possible types of instructions: "detailed" and "simple." The DOT, by contrast, defines the type of instructions an individual must be able to follow at each reasoning level with specificity from "simple one- or two-step instructions" at level one to "technical instructions in mathematical or diagrammatic form" at level five. Under Plaintiff's

such inconsistency requiring remand exists.

interpretation, an individual with a limited ability to understand or remember detailed instructions as that term is understood in the Social Security regulations would only be able to perform jobs requiring a DOT reasoning level of one.  This interpretation simply does not square with the number of gradations in a claimant's ability to follow instructions recognized in the DOT.  See Meissel, 403 F. Supp. 2d at 984.

Moreover, the DOT definition of reasoning level two specifically qualifies the requirement that an individual be able to perform jobs involving detailed instructions by stating those instructions must be "uninvolved."  As the District Court for the Central District of California noted, "[t]his qualifier certainly calls into question any attempt to equate the Social Security regulations' use of the term 'detailed' with the DOT's use of that term in the reasoning levels."  See Meissel, 403 F. Supp. 2d at 984; see also Hurse, supra (quoting Meissel).

Given the findings of a number of courts that the DOT's definition of GED reasoning level two does not conflict with an RFC limitation that a claimant may only perform simple work and the differing contexts in which the word "detailed" is used for purposes of the Social Security regulations and the DOT, the Court concludes that there is no discrepancy between the ALJ's RFC determination that Plaintiff may only follow simple instructions and the VE's testimony that she may perform jobs requiring level two reasoning.  Because there is no conflict between the VE testimony and the DOT, Plaintiff's argument that this issue requires a remand for clarification of alleged inconsistencies in the record is rejected.

Finally, even if the Court were to conclude that a conflict existed between the VE's testimony and the information contained within the DOT, the ALJ's failure to inquire about that conflict pursuant to SSR 00-4p or the broader standard recognized by the Third Circuit, see

Rutherford v. Barnhart, 399 F.3d 546, 556 (3d Cir. 2005), does not automatically require a remand. If substantial evidence exists in other portions of the record to support an ALJ's determination, the existence of "minor inconsistencies" between the VE testimony and the DOT need not be fatal. See Rutherford, 399 F.3d at 557-78; Jones v. Barnhart, 364 F.3d 501, 506 n.6 (3d Cir. 2004) (noting that "this Court has 'not adopt[ed] a general rule that an unexplained conflict between a VE's testimony and the DOT necessarily requires reversal'" (quoting Boone v. Barnhart, 353 F.3d 203 (3d Cir. 2003)). In this case, the ALJ appropriately relied on the VE's testimony, which was supported by substantial evidence in the record. The medical record evidence showed that Plaintiff had no significant limitations in her ability to understand, remember and carry out simple instructions (R. 109, 125). The jobs suggested by the VE, while requiring a reasoning level of two, were the type of unskilled light jobs that the evidence produced at the hearing indicated were well within Plaintiff's capabilities. (R. 254-55).

**B.** **ALJ's Determination that Plaintiff Retained the RFC to Perform Light Duty Work**

Plaintiff further argues that the ALJ's finding that Plaintiff retained the RFC to perform a range of light duty work despite her impairments is not supported by substantial evidence. According to Plaintiff, her DJD in both knees, the lumbar spine and the left hip, in combination with her massive obesity, limits her to performing no more than sedentary work. Plaintiff further argues that the ALJ mischaracterized the findings of Dr. Marged Linder, who conducted a psychological evaluation of the Plaintiff for the Pennsylvania Disability Determination Service ("DDS"). Defendant responds that the ALJ specifically considered Plaintiff's symptoms, as well as the cumulative effects of Plaintiff's obesity, in reaching an RFC determination, and that the

ALJ's decision is accordingly supported by substantial evidence.

The ALJ's RFC determination took a number of Plaintiff's physical and mental limitations into account.  In addition to restricting her to no more than light work, which requires maximum lifting of twenty pounds and frequent lifting of ten pounds, and the ability to sit or stand and walk six hours in an eight hour day, see 20 C.F.R. § 416.967, the ALJ found that Plaintiff could only occasionally climb, balance, stoop, kneel or crouch and must avoid crawling or using her feet bilaterally to operate foot controls or pushing and pulling.[3]  Contrary to Plaintiff's assertion, the ALJ noted that these restrictions on her ability to perform light work were specifically tailored to "accommodate the claimant's lower extremity pain and her obesity." (R. 27.)  In addition, the ALJ limited Plaintiff to low stress work, with only occasional decision making or changes in work setting and occasional interaction with the general public and coworkers.  (R. 24.)

As the Third Circuit has discussed, under the Social Security regulations, "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." Hartranft, 181 F.3d at 362.  Therefore, an ALJ must not only determine whether a claimant suffers from a medical condition that could cause her alleged symptoms, but she must also "evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work."  Id.  At the hearing before the ALJ, the Plaintiff testified that she was unable to return to her past relevant work because of leg, hip and back problems and that she

---

[3]  The finding that the Plaintiff can perform a limited range of light work is consistent with the regulations which define light work and acknowledge that a claimant need not be capable of performing all activities enumerated in that definition provided she has "the ability to do substantially all of these activities."  20 C.F.R. § 416.967 (emphasis added).

sits all day, cannot complete any household chores, uses a cane to go up and down stairs and can walk only a half a block at a time.  (R. 240-47.)  With respect to her mental limitations, she testified that she heard voices when she did not take her psychiatric medication.  (R. 244.)

The ALJ based her RFC determination on an examination of the entire record, including medical reports and Plaintiff's own testimony.  The ALJ concluded that Plaintiff's testimony about the extent to which her impairments impact her ability to work were not fully credible, noting that the record is devoid of "any objective medical evidence that the claimant's impairments are as severe as her testimony indicates."  (R. 25.)  In reaching this determination, the ALJ accorded great weight to the RFC Assessment performed by a non-examining state agency medical consultant, Dr. Mary Ryczak, who reviewed Plaintiff's medical records and concluded that Plaintiff retained the RFC to perform a limited range of light work.  (R. 146-47.)  In addition, the ALJ noted that Plaintiff's medical records show that she has received only conservative treatment for her physical impairments and that the physical evaluations completed by Dr. Brij Srivastava, a DDS physician, and by a number of physicians associated with the Einstein Regional Orthopaedic Specialists ("Einstein") indicate that Plaintiff is not in acute distress or unable to walk or climb stairs.

The ALJ's findings are supported by substantial evidence in the record.  Dr. Srivastava's evaluation observed that Plaintiff had straight leg tests within normal limits, no edema or joint deformity in her lower extremities, and that while she had some pain in the left knee, left hip, and back, she was able to walk and to go up and down stairs without assistance.  (R. 131-32.)  The treatment notes from Einstein, where Plaintiff's received treatment for her left knee pain from November 2004 until August 2005, note Plaintiff's pain symptoms and her limited range of

motion in her left knee, but also state that she has a full range of motion in all other joints, full

motor strength in the upper and lower extremities, and the ability to rise "from a sitting to

standing position without difficulty." (R. 157-64.) Although one physician assistant from

Einstein prescribed a cane for Plaintiff in January 2005 (R. 158-59), notes from physicians in the

same office indicated that, as of August 2005, Plaintiff was able to "ambulate without significant

difficulty." (R. 164.) Moreover, as the ALJ correctively observed, the record revealed no

significant evidence of neurologic compromise that adversely affected Plaintiff's ability to stand

or walk to the degree alleged. (R. 25.) For example, Dr. Srivastava indicated that no

neurological deficits were found (R. 131-32) and the treatment notes from Einstein describe

Plaintiff as "neurovascularly intact." (R. 161, 163-64.) The ALJ also relied on the statement of

Dr. Linder who wrote that, while Plaintiff complained of pain during their meeting, "there was

not any clear evidence of bracing or guarding, and she seemed to move and sit quite easily while

she was in the chair to be evaluated, although then she announced that the process of departure

would take 10 minutes because it would be so painful. . . . In fact, she was able to rise promptly

and move[] somewhat slowly out of the office." (R. 108.)

The only medical evidence in the record suggesting that Plaintiff's physical impairments

would inhibit her ability to perform any light work are an August 24, 2004 notation by her

treating physician, Dr. Gilbert Tabby, that Plaintiff "may not work" (R. 135) and a welfare form

also completed by Dr. Tabby, which indicates that Plaintiff was "temporarily disabled" from

November 15, 2004 until June 30, 2005. (R. 144.) Generally, if a treating physician's opinions

are well-supported by diagnostic evidence and consistent with other medical evidence in the

record, they will be afforded controlling weight, and it is an error of law for an ALJ to reject such

-13-

an opinion without adequate explanation.  See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir.

2001); 20 C.F.R. § 404.1527(d)(2).  An ALJ may nonetheless discount a treating physician's

opinion if that opinion is contradicted by other substantial evidence in the record, and the ALJ

provides an adequate explanation for the reasoning behind her conclusion.  Id. at 42-43.

    In this case, the ALJ rejected the opinion of Plaintiff's treating physician that she was

"temporarily disabled" in large part  because the physician's own treatment notes do not support

that conclusion.  (R. 26.)  The ALJ's decision not to accord Dr. Tabby's opinion controlling

weight was not committed in error.  Dr. Tabby offers no details to support his conclusory

statements that Plaintiff was temporarily disabled and may not work, and this conclusion appears

to be unsupported by his cursory, and largely illegible, treatment notes.  As the Third Circuit has

observed, "[f]orm reports in which a physician's obligation is only to check a box or fill in a

blank are weak evidence at best."  Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993).

Furthermore, these conclusions are inconsistent with the other medical record evidence as

discussed in detail above.

    With respect to Plaintiff's mental impairments, the ALJ gave significant weight to Dr.

Linder's assessment that Plaintiff had only slight or moderate limitations in her ability to perform

work-related tasks and retained the ability to perform simple tasks, in a low stress environment,

with limited interaction with others.  (R. 26.)  Plaintiff is correct that one of Dr. Linder's

questionnaire responses indicates that Plaintiff had a marked limitation in her ability to respond

appropriately in a work settling.  This questionnaire response alone, however, is insufficient to

undermine the ALJ's determination that Plaintiff's mental limitations did not preclude her from

working altogether.  As an initial matter, there is some question whether Dr. Linder's evaluation

-14-

was entirely accurate:  Dr. Linder notes several times that the Plaintiff was uncooperative during testing, and as a result, "it is likely her underlying intellectual abilities may be somewhat underestimated." (R. 107.)  In addition, this response is contradicted by other evidence in the record.  The Plaintiff's mental RFC assessment, completed by the state agency reviewing psychologist, Dr. James Cunningham, which the ALJ relied upon in her step two determination (R. 23), indicates that Plaintiff was only moderately limited in her ability to respond appropriately in a work setting.  (R. 26.)  Finally, Plaintiff's own testimony suggests that her psychological symptoms can be controlled with medication.  (R. 243-44.)[4]

Because the ALJ considered all the relevant record evidence and discussed the bases for her RFC conclusion, the Court concludes there is substantial evidence supporting the ALJ's RFC determination that Plaintiff is able to perform a limited range of light work.

### C.        ALJ's Consideration of Plaintiff's DJD of the Left Hip

Plaintiff's final contention is that the ALJ erred in failing to classify Plaintiff's DJD of the left hip as a severe impairment under step two of the five step sequential evaluation process.  Notably, Plaintiff does not cite a single instance in the record in support of her argument that her DJD of the left hip is severe, even under the de minimus standard recognized by the Third Circuit.  See Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003).  Indeed, the limited record evidence on Plaintiff's impairment seems to suggest the opposite conclusion.  An

---

[4] Neither party mentions that a psychological evaluation completed by an individual with a masters in social work in May 2005 assigned Plaintiff a GAF score of 50, which indicates serious impairment in social or occupational functioning.  Normally, failure to consider a claimant's GAF score can serve as a ground to remand a decision to the Commissioner. The ALJ, however, specifically discussed this score as part of her step two determination and gave an adequate explanation for her decision to disregard it, explaining that the treatment notes show Plaintiff's psychological condition improves with medication.  (R. 208-11.)

X-ray performed on Plaintiff's left hip on November 8, 2004 reveals "[m]ild degenerative joint disease of the left hip" with a "very minor degree of joint space narrowing."  (R. 189.)  Dr. Srivastava's evaluation indicates that Plaintiff had some tenderness in her left hip although it was overall "unremarkable" and that movement of her hip was within normal limits.  (R. 131.)  It does not appear from Plaintiff's extensive treatment notes from Einstein that Plaintiff ever complained of pain in her left hip.  (R. 157-63.)  The ALJ's decision not to include DJD of the left hip as a severe impairment was supported by substantial evidence.

## V.   Conclusion

For the reasons stated in the above memorandum, the Court concludes that the Commissioner's decision to deny Plaintiff SSI benefits because she was not disabled was supported by substantial evidence.  Accordingly, the Plaintiff's Motion for Summary Judgment will be denied and judgment will be entered in favor of the Defendant.

A:\Smith v. Astrue, 06-3193 SJ Memo.wpd

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

LORRAINE J. SMITH                    :          CIVIL ACTION

             v.                      :

MICHAEL J. ASTRUE                    :          NO. 06-3193

<u>**ORDER**</u>

        AND NOW, this 28th day of June, 2007, for the reasons stated in the foregoing

Memorandum, it is hereby ORDERED that Plaintiffs's Motion for Summary Judgment (Doc. No.

8) is DENIED and that judgment is entered in favor of Defendant and against Plaintiff.

        The Clerk shall close this case.


                                BY THE COURT:


                                  /s/ Michael M. Baylson
                                Michael M. Baylson, U.S.D.J.